PAUL ROTHE, Plaintiff-Appellant, v. MALONEY CADILLAC, INC., *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 85—903

Opinion filed March 25, 1986.—Rehearing denied May 13, 1986.

Arnold & Kadjan, of Chicago (L. Steven Platt, of counsel), for appellant.

Thomas D. Nyhan, John J. O'Malley, and William A. Morgan, all of Pope, Ballard, Shepard & Fowle, Ltd., of Chicago (Elmer W. Johnson, of General Motors Corporation, of counsel), for appellee General Motors Corporation.

Thomas D. Nyhan, John J. O'Malley, and William A. Morgan, all of Pope, Ballard, Shepard & Fowle, Ltd., of Chicago, for appellee Maloney Cadillac, Inc.

JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff appeals the dismissal with prejudice of counts III, IV and V of his six-count complaint against Maloney Cadillac, Inc. (Maloney), a Cadillac dealer, and Cadillac Motor Car Division, and General Motors Corporation (sometimes collectively General Motors), the manufacturer, based on alleged breaches of implied warranties. The issues presented include whether: (1) the doctrine of privity bars plaintiff's action against General Motors; (2) Maloney can disclaim liability under a breach of implied warranty theory; and (3) plaintiff should have been allowed to replead the implied warranty counts against Maloney and General Motors.

In May of 1982 plaintiff purchased a 1982 Cadillac Sedan DeVille from Maloney. The automobile was alleged to have been equipped with an "improper crankshaft causing excessive vibrations and improper operation on the road; *** [and] the engine *** was defective in materials and workmanship causing improper acceleration ***." Plaintiff brought the automobile to Maloney for repair but the defects were never corrected. In January of 1984, plaintiff sent a letter to Maloney purporting to revoke acceptance of the automobile.

Counts I and II of the complaint, based upon breach of an express warranty given by General Motors, were allowed to stand. Count VI premised on the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1983, ch. 121½, par. 261 et seq.), was stricken with leave to file an amended pleading. These counts are not subject to this appeal. At issue here are counts III, IV and V which the cir-

cuit court dismissed with prejudice.[1] Counts III and V, against General Motors and Maloney respectively, allege breaches of an implied warranty of fitness for ordinary purposes under the Magnuson-Moss Warranty—Federal Trade Commission Improvement Act (Magnuson-Moss) (15 U.S.C. sec. 2310(d)(1) (1982).) Count IV alleges that General Motors and Maloney breached implied warranties of both merchantability and fitness for a particular purpose under the Uniform Commercial Code (UCC). (Ill. Rev. Stat. 1983, ch. 26, pars. 2—314, 2—315.) Claimed damages were confined to economic loss and costs of the action.

■ In reviewing the dismissal, we must accept as true all well-pleaded facts and reasonable inferences flowing therefrom, and must also consider whether, as a matter of law, the dismissed counts stated causes of action. *Wilczynski v. Goodman* (1979), 73 Ill. App. 3d 51, 54, 391 N.E.2d 479.

## I

We raise, of our own motion, a problem which appears to be recurring with undesirable frequency. Both defendants in this case, General Motors and Maloney, have filed what purport to be combined sections 2—615 and 2—619 motions. (Ill. Rev. Stat. 1983, ch. 110, pars. 2—615, 2—619.) No effort is made in either to apply the specific motion to specific portions of the complaint, nor to otherwise delineate their intended application. This approach to motion practice creates a hybrid motion which disregards the differences in theory and application each motion possesses and the potential prejudice which may result from the continued utilization of such a combined motion procedure (*MBL (USA) Corp. v. Diekman* (1985), 137 Ill. App. 3d 238, 484 N.E.2d 371) and constitutes a practice which our supreme court has expressly disapproved (*Janes v. First Federal Savings & Loan Association* (1974), 57 Ill. 2d 398, 312 N.E.2d 605). Moreover, this court has recently held that "where prejudice results from such an improper motion practice, we will reverse without addressing the merits of the motion as argued on appeal." (*Eddings v. Dundee Township Highway Commissioner* (1985), 135 Ill. App. 3d 190, 200, 478 N.E.2d 888.) It is the responsibility of court and counsel to discourage and refrain from such practice. In this instance, we elect to consider the merits of the case in the absence of patent prejudice.

---

[1]Appropriate Supreme Court Rule 304(a) language was contained in the order of dismissal.

## II

■ The susceptibility of General Motors, the manufacturer of plaintiff's automobile with which plaintiff did not deal directly, to liability for breach of implied warranties under either Magnuson-Moss[2] or the UCC depends upon the viability of the doctrine of privity of contract in this State. General Motors maintains that lack of contractual privity bars plaintiff's actions against it.

The concept of privity is one which has undergone considerable change in recent years since *Rotche v. Buick Motor Co.* (1934), 358 Ill. 507, 193 N.E. 529, recognized the right of a "remote" purchaser to sue the manufacturer of an automobile purchased through a dealer for personal injuries sustained. It has been abolished by our supreme court more recently in a variety of other contexts (see *Tiffin v. Great Atlantic & Pacific Tea Co.* (1959), 18 Ill. 2d 48, 162 N.E.2d 406 (action for personal injury resulting from tainted food against manufacturer not barred by lack of privity); *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 618-19, 210 N.E.2d 182 (*Suvada*) (privity not required in actions for personal injuries and property damage resulting from defective truck brake system); *Rozny v. Marnul* (1969), 43 Ill. 2d 54, 62, 250 N.E.2d 656 (*Rozny*) (in tort action by purchaser of house against remote surveyor for inaccurate plat of survey lack of privity is not a defense); *Berry v. G.D. Searle & Co.* (1974), 56 Ill. 2d 548, 558, 309 N.E.2d 550 (in action against manufacturer for breach of implied warranty involving birth control device privity is not required); *Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 183, 441 N.E.2d 324 (*Redarowicz*) (lack of privity does not bar action by subsequent purchaser against home builder for breach of implied warranty of habitability)). This erosion of the doctrine of privity has been based n considerations of public policies such as protecting consumers from imminently dangerous, unsafe goods or latently defective products or dwellings and assigning the resultant losses to the parties placing them in commerce. The erosion is also attributable to our supreme court's analytical approach in establishing the scope of tort liability to third persons, exemplified by its statement in *Rozny v. Marnul* (1969), 43 Ill 2d 54, 62, 250 N.E.2d 656:

"[W]e emphasize that lack of direct contractual relationship between the parties is not a defense in a tort action in this

---

[2]Under Magnuson-Moss, implied warranties are warranties "arising under State law." (15 U.S.C. sec. 2301(7) (1982).) Therefore, State law requirements with respect to privity control implied warranty actions under Magnuson-Moss. *Walsh v. Ford Motor Co.* (D.D.C. 1984), 588 F. Supp. 1513, 1524-26.

jurisdiction. Thus, tort liability will henceforth be measured by the scope of the duty owed rather than the artificial concepts of privity."

Although the supreme court in *Suvada* approved as part of plaintiffs' damages the costs they incurred in repairing their tractor-trailer unit, and the appellate court has sometimes recognized property damage claims due to defectively manufactured products by remote users who purchased the products through third parties (*e.g., Admiral Oasis Hotel Corp. v. Home Gas Industries, Inc.* (1965), 68 Ill. App. 2d 297, 216 N.E.2d 282 (defectively manufactured air conditioners); *Rhodes Pharmacal Co. v. Continental Can Co.* (1966), 72 Ill. App. 2d 362, 219 N.E.2d 726 (defectively manufactured aerosol cans), in other cases of economic loss based upon breach of implied warranty, however, our appellate courts have maintained the privity requirement (*Bagel v. American Honda Motor Co.* (1985), 132 Ill. App. 3d 82, 88, 477 N.E.2d 54; *Spiegel v. Sharp Electronics Corp.* (1984), 125 Ill. App. 3d 897, 899-900, 466 N.E.2d 1040). General Motors relies heavily on this court's recent decision in *Szajna v. General Motors Corp.* (1985), 130 Ill. App. 3d 173, 176-77, 474 N.E.2d 397, *appeal allowed* (1985), 106 Ill. 2d 560, which echoes this requirement. These cases, however, did not consider public policy ramifications in retaining the privity requirement. We do so here, and follow the rationale of our supreme court in *Redarowicz* and that of decisions from sister jurisdictions which reject the privity requirement in cases such as this.

In *Redarowicz*, our supreme court extended an implied warranty of habitability from builder-realtor to subsequent purchasers, noting that the original and subsequent purchasers of homes have little opportunity to inspect the construction methods used in building a home; are not knowledgeable in construction practices; and must substantially rely upon the expertise of the builder. (*Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 183, 441 N.E.2d 324.) The warranty recognized in that case was developed to protect purchasers upon discovery of latent defects which manifest themselves within a reasonable time in new homes and was extended to subsequent purchasers for the foregoing reasons. Here, the purchaser of a new automobile has as little or, perhaps, less knowledge of the object purchased than one who purchases a home. Certainly, a purchaser's knowledge of the use or capacity of the crankshaft installed in his auto, and the ability of a motor to accelerate without vibration, is no more apparent to a purchaser than a chimney and wall separating itself from the structure, or a leaky basement or roof, as was the situation in *Redarowicz*.

The issue of privity as a requisite between an automobile manu-

facturer and the purchaser of its products through an independent dealer or agency absent a collision or impact has not been decided in Illinois by our supreme court; however, that question has been decided in other jurisdictions. One of the leading cases in this regard is *Manheim v. Ford Motor Co.* (Fla. 1967), 201 So. 2d 440. There the supreme court of Florida was confronted with an action by a purchaser for breach of an implied warranty of merchantability of fitness against the retailer and the manufacturer of an automobile for failure of the vehicle to operate properly. Ford's motion for summary judgment was allowed by virtue of Ford's representation that: its dealer-agreement did not create any relationship of principal and agent; the dealer was not authorized to create or assume obligations on behalf of Ford; Ford's warranty to the dealer to replace parts without charge and reimburse the dealer for labor in replacing or repairing such parts; and the express statement that the warranty was in lieu of any other express or implied warranty including any implied warranty of merchantability or fitness. The court reviewed cases from other jurisdictions and concluded that neither the absence of privity between the manufacturer and a purchaser of an automobile, nor the execution of a written warranty agreement between the manufacturer and its dealer, operated to preclude recovery on the basis of implied warranty of a product due to its defects and lack of fitness and suitability. Among the cases cited with approval by the Florida Supreme Court was *Ford Motor Co. v. Lonon* (1966), 217 Tenn. 400, 409, 398 S.W.2d 240, 244, from which it partially quoted the supreme court of Tennessee, itself quoting from the opinion of the court of appeals of New York in *Randy Knitwear, Inc. v. American Cyanamid Co.* (1962), 11 N.Y.2d 5, 12, 226 N.Y.S.2d 363, 367, as follows (*Manheim v. Ford Motor Co.* (Fla. 1967), 201 So. 2d 440, 443):

> " 'The world of merchandising is, in brief, no longer a world of direct contract; it is, rather, a world of advertising and, when representations expressed and disseminated in the mass communication media and on labels (attached to the goods themselves) prove false and the user or consumer is damaged by reason of his reliance on those representations, it is difficult to justify the manufacturer's denial of liability on the sole ground of the absence of technical privity.' "

That statement was made following the New York court's analysis of cases decided since *Ultramares Corp. v. Touche* (1931), 255 N.Y. 170, 180, 174 N.E. 441, 445, in which Chief Judge Cardozo commented on "[t]he assault upon the citadel of privity."

In *Werber v. Mercedes-Benz of North America, Inc.* (1984), 152

Cal. App. 3d 1039, 199 Cal. Rptr. 765, *hearing denied* (1984), (opinion not officially published), the California Court of Appeal recognized an action for breach of an implied warranty of merchantability in a complaint which alleged that a design or manufacturing defect in the automobile produced created latent defects in the subframe assembly. There the court noted that although privity of contract appears to remain a requirement for actions based upon implied warranties, exceptions to the privity rule were made in a number of instances and that because of changing economic conditions and concepts of justice, the appropriateness of an exception to the privity rule would apply to the purchase of an automobile as well. To the same effect is *Spring Motors Distributors, Inc. v. Ford Motor Co.* (1985), 98 N.J. 555, 489 A.2d 660.

In a case factually similar to the case *sub judice, Lang v. General Motors Corp.* (N.D. 1965), 136 N.W.2d 805 (*Lang*), the supreme court of North Dakota upheld a complaint for breach of an implied warranty against the manufacturer of a truck wherein plaintiff asserted that the vehicle could not be operated safely on the highway because it would wobble and shimmy due to the negligent manufacture, construction and assembly by defendant. The manufacturer's defense was that the seller was an independent dealer and that no contractual relationship existed between plaintiff and defendant and therefore no privity of contract between them from which an implied warranty could arise. In recognizing the actionability of plaintiff's complaint, the North Dakota Supreme Court stated (136 N.W.2d 805, 809):

> "Thus a number of recent decisions hold that a person who buys from a retailer may, nevertheless, recover from the manufacturer for damages caused by the manufacturer's negligence even if the buyer is a remote buyer with whom the manufacturer has had no direct contractual relations. And recovery is not limited to damages for personal injuries."

Further in its opinion, the court in *Lang* stated (136 N.W.2d 805, 809-10):

> "It is perfectly clear, therefore, that where a sale is made under a trade name and where the manufacturer has conducted a national advertising campaign and sales are accomplished through local dealers, the demand for such products is created by the advertising of the manufacturer. The purpose of the advertising conducted by such manufacturer is to cultivate the ultimate consumer. Thus, where the article sold as a new article is defectively manufactured, the interests of the ultimate consumers can be protected only by eliminating the requirement of

privity between the manufacturer and his dealers and the expected ultimate consumer. It would be unreasonable to hold that, if a buyer purchases, for example, a 'Ford' or 'Chevrolet' or 'Cadillac' or 'Chrysler' or any other make of automobile, no implied warranty of merchantable quality can be asserted by the purchaser against the manufacturer even though the particular car delivered as a new automobile is in such bad condition and so defective in materials or construction that it cannot be operated at all and is wholly useless or unsatisfactory for the ordinary purposes which such automobile is designed to serve.

Accordingly, under modern marketing conditions, when a manufacturer puts a new truck-tractor or other new product into the stream of trade and promotes its sale to the public, an implied warranty that it is reasonably fit and suitable for use, as such, accompanies such new vehicle into the hands of the ultimate buyer. Absence of privity between the manufacturer and the buyer is immaterial."

Accord, *Volkswagen of America, Inc. v. Novak* (Miss. 1982), 418 So. 2d 801, 803; *Ford Motor Co. v. Tidwell* (Tex. Civ. App. 1978), 563 S.W.2d 831; *Cova v. Harley Davidson Motor Co.* (1970), 26 Mich. App. 602, 182 N.W.2d 800. See also *Ford Motor Co. v. Taylor* (1969), 60 Tenn. App. 271, 446 S.W.2d 521; *Berg v. General Motors Corp.* (1976), 87 Wash. 2d 584, 555 P.2d 818.

The Supreme Court of Texas in *Nobility Homes of Texas, Inc. v. Shivers* (Tex. 1977), 557 S.W.2d 77, found that an action by a purchaser of a mobile home against a remote manufacturer for breach of an implied warranty of merchantability was not barred by lack of privity. Recognizing that privity was not required in tort actions, as is now the case in Illinois, the Texas court reasoned that it would be unfair and inconsistent to allow a consumer to recover against a remote manufacturer whose defective product had caused the consumer the slightest physical harm, yet deny recovery to a consumer who had suffered a devastating economic loss. To hold otherwise would encourage manufacturers to employ "thinly capitalized 'collapsible corporations' to sell their commercially inferior products leaving no one for the buyer to sue for his economic loss." *Nobility Homes of Texas, Inc. v. Shivers* (Tex. 1977), 557 S.W.2d 77, 81-82.

Other courts have held that privity of contract is not required in actions by purchasers against remote manufacturers for recovery of economic loss based on a theory of breach of implied warranty in non-automobile cases. See, *e.g., Groppel Co. v. United States Gypsum Co.* (Mo. App. 1981), 616 S.W.2d 49; *Western Equipment Co. v. Sheridan*

*Iron Works, Inc.* (Wyo. 1980), 605 P.2d 806, 810; *Hiles Co. v. Johnston Pump Co.* (1977), 93 Nev. 73, 78, 560 P.2d 154, 157; *Morrow v. New Moon Homes, Inc.* (Alaska 1976), 548 P.2d 279, 290-91; *Gasque v. Eagle Machine Co.* (1978), 270 S.C. 499, ___, 243 S.E.2d 831, 832; *Kassab v. Central Soya* (1968), 432 Pa. 217, 226, 246 A.2d 848, 852. *Contra, City of LaCrosse v. Schubert, Schroeder & Associates, Inc.* (1976), 72 Wis. 2d 38, 240 N.W.2d 124; *Salmon Rivers Sportsman Camps, Inc. v. Cessna Aircraft Co.* (1975), 97 Idaho 348, 544 P.2d 306; *Oliver v. City Builders, Inc.* (Miss. 1974), 303 So. 2d 466; *General Motors Corp. v. Halco Instruments, Inc.* (1971), 124 Ga. App. 630, 185 S.E.2d 619; *Koellmer v. Chrysler Motors Corp.* (1970), 6 Conn. Cir. Ct. 478, 276 A.2d 807; *Hupp Corp. v. Metered Washer Service* (1970), 256 Or. 245, 472 P.2d 816.

In light of the foregoing authority, we hold that the absence of privity in the present case between plaintiff and General Motors does not bar plaintiff's recovery from General Motors for economic loss suffered as a result of a breach of implied warranties. The policy considerations of protecting a consumer from a defective product and placing the burden of loss on the party responsible are applicable here.[3] Therefore, counts III and IV of plaintiff's complaint against General Motors based on breach of implied warranties under Magnuson-Moss and the UCC stated causes of action, and dismissal by the circuit court for lack of privity is reversed.

### III

■ We next consider whether the complaint states causes of action against Maloney for breach of implied warranties under the UCC and Magnuson-Moss. The issue raised here is the efficacy of the disclaimers contained in Maloney's sales contract.

The UCC permits both the exclusion or limitation of an implied warranty of merchantability by conspicuous writing which uses the word "merchantability," and disclaimer of an implied warranty of fitness for a particular purpose, provided the disclaimer is conspicuous. (Ill. Rev. Stat. 1983, ch. 26, par. 2—316(2).) Conspicuous writing is defined as so written that a reasonable person against whom it is to operate ought to have noticed it. Ill. Rev. Stat. 1983, ch. 26, par. 1—201(10).

---

[3]The importance of such considerations in Illinois is reflected in the recently enacted New-Car Buyer Protection Act (Ill. Rev. Stat. 1983, ch. 121½, par. 1201 *et seq.*), which affords consumers a variety of remedies against manufacturers of cars that do not conform to the manufacturer's express warranties.

Maloney's contract expressly provides in three separate places that Maloney is disclaiming all warranties, express or implied, including any implied warranty of merchantability or fitness for a particular purpose. Two of these provisions are set off in boxes: one employs large bold print; the other uses italics. These disclaimers must be deemed "conspicuous" as defined by UCC. Such disclaimers effectively avoid liability for breach of implied warranty under the UCC. (See, e.g., *Bell Fuels, Inc. v. Lockheed Electronics Co., Inc.* (1985), 130 Ill. App. 3d 940, 945-46, 474 N.E.2d 1312.) Therefore, Maloney's disclaimed liability under the UCC was effective and count IV of the complaint, the UCC warranty count, was properly dismissed as it relates to Maloney.

Maloney's disclaimers under Magnuson-Moss, however, must be treated differently. Magnuson-Moss prohibits a supplier of goods, such as Maloney, from disclaiming implied warranties if: (1) the supplier has given a written warranty to the consumer; or (2) the supplier has entered a service contract with the consumer within 90 days of a sale. (15 U.S.C. sec. 2308(a) (1982).) A broad definition of "written warranty" is incorporated in Magnuson-Moss so that not only a manufacturer's warranty is included but also:

> "any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking, which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product." 15 U.S.C. sec. 2301(6)(B) (1982).

No Illinois cases construing this definition in a context similar to the instant case is found; however, two recent decisions from other jurisdictions have considered this language. Both *Ventura v. Ford Motor Corp.* (1981), 180 N.J. Super. 45, 57-61, 433 A.2d 801, 807-10, and *Freeman v. Hubco Leasing, Inc.* (1985), 253 Ga. 698, 702-04, 324 S.E.2d 462, 467-68, hold that automobile dealer sales contracts which include provisions whereby the dealer promised to perform services under the manufacturer's warranty constitute written warranties by the dealer under Magnuson-Moss. Finding written warranties by the dealers, these cases conclude that the dealer could not disclaim implied warranties.

A review of the sales contract between Maloney and plaintiff reveals a provision identical to that in *Ventura v. Ford Motor Corp.* (1981), 180 N.J. Super. 45, 433 A.2d 801, in which Maloney "agrees to

promptly perform and fulfill all terms and conditions of the owner service policy." This provision must be considered a "written warranty" under Magnuson-Moss (15 U.S.C. sec. 2301(6)(B) (1982)), which could not support Maloney's disclaimer of implied warranties (15 U.S.C. sec. 2308(a) (1982)). Count V of the complaint alleging breaches of implied warranties under Magnuson-Moss states a cause of action against Maloney. The circuit court erred in dismissing this count.

## IV

■ As a final matter, plaintiff asserts that with respect to count IV, based on the UCC, he should have been allowed to amend his complaint. The portion of that count based on breach of implied warranty of fitness for a particular purpose (Ill. Rev. Stat. 1983, ch. 26, par. 2—315) was properly dismissed, and amendment would not be proper because of the absence of any suggested factual basis to support plaintiff's recovery under such a theory (*Appleman v. Fabert Motors, Inc.* (1961), 30 Ill. App. 2d 424, 431-32, 174 N.E.2d 892, *appeal denied* (1961), 21 Ill. 2d 621; *Collum v. Fred Tuch Buick* (1972), 6 Ill. App. 3d 317, 321, 285 N.E.2d 532), and must be affirmed. To the extent that count IV is based on breach of implied warranty of merchantability (Ill. Rev. Stat. 1983, ch. 26, par. 2—314), however, amendment of the complaint is unnecessary because, as the foregoing discussion on privity and the disclaimers demonstrates, the circuit court's dismissal of count IV must be reversed in part and remanded.

Accordingly, the order of the circuit court is affirmed in part and reversed and remanded in part for proceedings consistent with this decision.

Affirmed in part; reversed and remanded in part.

STAMOS and SCARIANO, JJ., concur.