DOROTHY LYTLE, Plaintiff-Appellant, v. ROTO LINCOLN MERCURY & SUBARU, INC., *et al.*, Defendants-Appellees.

Second District   No. 2—87—0454

Opinion filed March 14, 1988.

510

Maureen H. Flaherty, of Lehrer, Flaherty & Canavan, of Wheaton, for appellant.

Jerald M. Mangan, of Fraterrigo, Best & Beranek, of Wheaton, for appellee Roto Lincoln Mercury & Subaru, Inc.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiff, Dorothy Lytle, filed a multicount complaint in the circuit court of Du Page County seeking revocation of a sales contract and monetary damages. Plaintiff's complaint named as defendants Roto Lincoln Mercury & Subaru, Inc., Subaru of America, Inc. (SOA), Fuji Heavy Industries, Ltd., and Subaru Mid-America, Inc. Fuji Heavy Industries, Ltd., and Subaru of America, Inc., were voluntarily nonsuited and are not parties to this appeal. On October 17, 1986, the circuit court granted summary judgment in favor of Subaru of Mid-America, Inc., which plaintiff has not appealed. On April 20, 1987, the circuit court granted summary judgment in favor of the only remaining defendant, Roto Lincoln-Mercury/Subaru, Inc. (hereinafter defendant), which plaintiff now appeals.

The issues raised by this appeal are: (1) whether defendant adopted the written warranty of the manufacturer; (2) whether defendant provided a written warranty under section 2301(6)(B) of the Magnuson-Moss Warranty Act (Magnuson-Moss) (15 U.S.C. §2301(6)(B) (1982)); (3) whether defendant's written disclaimer of the implied warranties of merchantability and fitness for a particular purpose is conspicuous within the meaning of section 2—316(2) of the Uniform Commercial Code (UCC) (Ill. Rev. Stat. 1985, ch. 26, par. 2—316(2)); (4) whether plaintiff should have received an evidentiary hearing on the question of the unconscionability of defendant's disclaimer; and (5) whether plaintiff stated a separate and cognizable claim for revocation under section 2—608 of the UCC.

Plaintiff purchased a new Subaru automobile from defendant, a new car dealer, in May 1984 for $11,156.18. Prior to delivery of the automobile to plaintiff, defendant completed a "New Car Get Ready" form which states that it prepared the automobile for delivery. The form does not indicate what specific procedures, if any, were performed in preparing the automobile for delivery, other than that a "Rusty Jones" treatment was provided.

Additionally, defendant presented plaintiff with a booklet which

had on the cover the words "Subaru" and "1984 Warranty and Service Booklet." The inside of the front cover of the booklet contained in bold print at the top "THIS IS YOUR SUBARU WARRANTY AND SERVICE BOOKLET." Immediately below that language are the words "issued to" followed by plaintiff's name, address, and signature. Directly below that are the words "issued by" followed by defendant's business name, address and authorized signature. At the bottom of the same page in larger, bold print is the following:

"PLEASE KEEP THIS BOOKLET IN YOUR CAR AT ALL TIMES AND MAKE IT AVAILABLE TO YOUR SUBARU DEALER IF WARRANTY SERVICE IS NEEDED. BE CERTAIN TO HAVE THE RECORD OF INSPECTION AND MAINTENANCE SERVICES CONTAINED IN THIS BOOKLET VALIDATED BY YOUR SUBARU DEALER OR OTHER SERVICE FACILITY WHO PERFORMS THOSE SERVICES."

Finally, on page four of the booklet, under a section entitled "WHO MAKES THIS WARRANTY," are the words "This warranty is made by Subaru of America, Inc. ('SOA')" followed by the address of SOA.

Plaintiff also signed a purchase order which contained language purporting to disclaim any implied warranties of merchantability and fitness for a particular purpose. (See Appendix A.) The disclaimer was located in the lower right hand corner of the front side of the purchase order, directly above the buyer's signature line.

Approximately four to five months after the purchase of her new automobile, plaintiff apparently noticed a "clicking noise" in the dash and took her automobile to defendant for an inspection and any needed repairs. It was eventually determined, after several service trips in which the automobile was kept for periods up to nine weeks, that the problem was a faulty transmission. Defendant eventually replaced the transmission, but plaintiff refused to accept the automobile. After writing letters to defendant, and the other parties below, seeking replacement of her automobile, plaintiff filed suit.

In the two counts of the complaint against defendant plaintiff alleged in count I that defendant was liable under both Illinois law and Magnuson-Moss pursuant to a written warranty offered by it to plaintiff when she purchased her new automobile. In count II, plaintiff alleged an implied warranty of merchantability under UCC section 2—314 and further that under section 2308 of Magnuson-Moss a supplier may not disclaim any implied warranty in the face of a written warranty. In both counts of the complaint plaintiff also sought revocation of the sale of the automobile.

In its answer, defendant raised as an affirmative defense to the implied warranty count that the implied warranty was affirmatively and conspicuously disclaimed. Plaintiff did not file a reply to this affirmative defense. Subsequently, defendant filed its motion for summary judgment. No response was filed by plaintiff. Following oral argument on the motion, the circuit court granted summary judgment in favor of defendant on both counts against it.

Plaintiff contends on appeal that defendant is liable under the express written warranty issued by SOA in its warranty booklet because defendant adopted the warranty. Specifically, plaintiff argues that because defendant issued the warranty booklet and signed it on the inside cover, it adopted the warranties contained therein and thus became a cowarrantor. Plaintiff also maintains that defendant, by its various words and actions, provided its own written warranty under section 2301(6)(B) of Magnuson-Moss. Defendant replies that an automobile dealer does not, by delivering, presenting, or explaining a manufacturer's warranty, without more, adopt that warranty. Defendant further maintains that its words and actions at the time of the sale did not create a written warranty under section 2301(6)(B) of Magnuson-Moss.

Plaintiff also contends that under section 2308 of Magnuson-Moss there can be no disclaimer of an implied warranty in the face of a written warranty. In this respect, she argues that there can be no disclaimer in this case because either defendant adopted the SOA written warranty or because defendant gave its own written warranty under section 2301(6)(B) of Magnuson-Moss. If defendant did give a written warranty under these circumstances, then it could not effectively disclaim any implied warranties (see 15 U.S.C. §2308(a) (1982); *Rothe v. Maloney Cadillac, Inc.* (1986), 142 Ill. App. 3d 937, 946, 492 N.E.2d 497, *rev'd on other grounds* (1988), 119 Ill. 2d 288), and it would not be necessary to address the remaining issues as to defendant's alleged disclaimer.

The purpose of summary judgment is to determine whether there are any genuine issues of material fact (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867), and it should only be granted when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c).) Although summary judgment is an expeditious method of disposing of a lawsuit, it should only be allowed when the right of the moving party is clear and free from doubt. (*Purtill*, 111 Ill. 2d at 240.) The court

must consider all of the evidence before it and construe it strictly against the movant and liberally in favor of the nonmovant. (111 Ill. 2d at 240.) Furthermore, if the moving party supplies facts which, if not contradicted, would entitle such party to judgment as a matter of law, the opposing party cannot rely on the pleadings alone to raise issues of material fact. (111 Ill. 2d at 240-41.) The reviewing court's function is limited to a determination of whether the trial court correctly ruled that no genuine issue of material fact has been raised, and if none was raised, whether judgment as a matter of law was correctly entered. *Fuller v. Justice* (1983), 117 Ill. App. 3d 933, 938, 453 N.E.2d 1133.

Section 700.4 of the Code of Federal Regulations provides:

"Section 110(f) of the Act provides that only the supplier 'actually making' a written warranty is liable for purposes of FTC and private enforcement of the Act. *A supplier who does no more than distribute or sell a consumer product covered by a written warranty offered by another person or business and which identifies that person or business as the warrantor is not liable for failure of the written warranty to comply with the Act or rules thereunder.* However, other actions and written and oral representations of such a supplier in connection with the offer or sale of a warranted product may obligate that supplier under the Act. *If under State law the supplier is deemed to have 'adopted' the written affirmation of fact, promise, or undertaking,* the supplier is also obligated under the Act. Suppliers are advised to consult State law to determine those actions and representations which may make them co-warrantors, and therefore obligated under the warranty of the other person or business." (Emphasis added.) (16 C.F.R. §700.4 (1987).)

Neither party has cited, nor has our research indicated, any Illinois cases addressing the issue of what constitutes a seller's adoption of a manufacturer's warranty. Several cases from other jurisdictions, however, have held that the mere delivery, presentation or explanation of a manufacturer's warranty, without more, does not render a dealer a cowarrantor by adoption. See, *e.g., Motor Homes of America, Inc. v. O'Donnell* (Fla. App. 1983), 440 So. 2d 422; *Kure v. Chevrolet Motor Division* (Wyo. 1978), 581 P.2d 603; *Import Motors, Inc. v. Matthews* (Tex. Civ. App. 1977), 557 S.W.2d 807; *Courtesy Ford Sales, Inc. v. Farrior* (1974), 53 Ala. App. 94, 298 So. 2d 26; *Cochran v. McDonald* (1945), 23 Wash. 2d 348, 161 P.2d 305.

In the present case, defendant merely presented SOA's war-

ranty, contained in the warranty booklet, to plaintiff. It took no other steps that can be construed as an adoption of the warranty. The fact that the warranty booklet was "issued by" defendant does not alone create an adoption. The defendant is certainly authorized, if not obligated, to issue such booklet with each new Subaru that it sells. The fact that it and the purchaser complete the "issued to" and "issued by" section merely verifies that the booklet was in fact presented and received by the new owner. There is simply no other evidence in this record to support plaintiff's contention that defendant adopted the manufacturer's warranty.

■ We also do not agree with plaintiff's contention that the meanings of the words "issued to" and "issued by" create a question of fact. The question before this court is simply whether the inclusion of such words constituted an adoption of the warranty, which we have held, as a matter of law, it does not. There is no need to further determine the meaning of those words.

■ The next issue to be addressed is whether defendant provided a written warranty within the meaning of section 2301(6)(B) of Magnuson-Moss. Plaintiff relies on the definition of the term "written warranty" as provided in section 2301(6)(B) of Magnuson-Moss in arguing that defendant provided a written warranty based upon either the language on the inside cover of the warranty booklet, the fact that defendant's provided the "New Car Get Ready" form, or that a letter given to plaintiff by defendant constitutes a written undertaking to perform a remedial action with respect to the automobile.

Magnuson-Moss broadly defines written warranty as:

> "any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking, which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product." 115 U.S.C. §2301(6)(B) (1982).

Our research indicates only one Illinois case interpreting this section. The appellate court, in *Rothe v. Maloney Cadillac, Inc.* (1986), 142 Ill. App. 3d 937, 492 N.E.2d 497, held that a dealer who agrees, in a dealer's sales contract, to promptly perform and fulfill all terms and conditions of the owner's service policy has given a written warranty within the meaning of Magnuson-Moss.

In this case, however, plaintiff did not allege that the defendant's

sales contract contained any language that arguably created a written warranty under Magnuson-Moss. Nor does the sales contract contain any such language. *Rothe*, therefore, is not controlling here.

Furthermore, we find that neither the language contained in the inside of the cover page of the warranty booklet nor the "New Car Get Ready" form constitutes a written warranty within the meaning of section 2301(6)(B). Neither is arguably a written undertaking "to refund, repair, replace, or take other remedial action" and, therefore, fails to meet the definition in section 2301(6)(B).

As noted earlier, the language "issued to" and "issued by" is no more than documentation that the dealer did in fact provide the warranty and service booklet to the new car purchaser. The "New Car Get Ready" form is simply a form which the dealer completed indicating that the vehicle had been prepared for delivery. It contains no language which could be construed as being a written warranty under Magnuson-Moss.

Plaintiff's remaining argument as to written warranties suggests that defendant gave plaintiff a letter which constituted a written warranty under section 2301(6)(B) and *Rothe*. As discussed earlier, *Rothe* dealt with express language within a written sales contract and is, therefore, inapplicable to this case.

■ Moreover, we find that the letter does not constitute a written warranty under section 2301(6)(B) for two additional reasons. First, there is no language in the letter which even arguably fits within the meaning of section 2301(6)(B). It is simply a letter thanking plaintiff for purchasing her new automobile and recommending that she take her automobile to defendant's service department in accordance with the suggested maintenance program.

Second, section 2301(6)(B) requires that such written affirmation, promise or undertaking be a basis of the bargain between a supplier and a buyer before it can be considered a written warranty. There is no evidence to support plaintiff's contention that she received the letter prior to or contemporaneous with the consummation of the sale, such that it could have been the basis of the bargain between the parties.

■ The next issue is whether defendant's purported disclaimer of the implied warranty of merchantability was ineffective as a matter of law. Plaintiff raises several contentions as to the effectiveness and validity of the disclaimer of implied warranties found on defendant's purchase order. First, she argues that, under section 2—316(2) of the UCC, defendant's disclaimer is ineffective because it is not conspicuous. Second, plaintiff maintains that the trial court erred in

granting summary judgment to defendant without providing an evidentiary hearing on the question of the unconscionability of the disclaimer under section 2—302 of the UCC. Defendant responds that the disclaimer of the implied warranty of merchantability is conspicuous within section 2—316(2) of the UCC. Defendant further contends that plaintiff is not entitled to an evidentiary hearing on unconscionability because, as is required by section 2—302(2) of the UCC, she never made a claim of unconscionability to the trial court. Defendant further argues that even if plaintiff were entitled to a hearing, she waived the hearing because she never requested it in the trial court.

A seller may disclaim any implied warranty of merchantability, provided that the language mentions merchantability, and, if in writing, the disclaimer must be conspicuous. (Ill. Rev. Stat. 1985, ch. 26, par. 2—316; *Rothe*, 142 Ill. App. 3d at 945, 492 N.E.2d at 503.) In this case, there is a disclaimer in the right-hand corner of the front side of defendant's purchase order which contains the word merchantability. Consequently, plaintiff only challenges the conspicuousness of the disclaimer.

Conspicuousness is defined in the UCC, as pertinent hereto, as a term or clause that is "so written that a reasonable person against whom it is to operate ought to have noticed it." (Ill. Rev. Stat. 1985, ch. 26, par. 1—201(10).) Furthermore, the question of conspicuousness is a decision for the court. Ill. Rev. Stat. 1985, ch. 26, par. 1—201(10).

■ In this case, defendant's disclaimer is conspicuous within the meaning of section 1—201(10) for several reasons. First, it is captioned "Disclaimer of Warranties" in capital letters and in bold print. Second the caption is heavily underlined. Third, it is located in a boxed-off section on the purchase order. Fourth, it is located on the front side of the purchase order. And finally, it is located approximately 1¼ inches, above the purchaser's signature line on the purchase order. (See Appendix A.) The warranties disclaimer here was certainly one that a reasonable person ought to have noticed.

■ ■ We next must determine whether plaintiff was entitled to an evidentiary hearing on the issue of the unconscionability of the warranty disclaimer under section 2—302(2) of the UCC. (Ill. Rev. Stat. 1985, ch. 26, par. 2—302(2).) Defendant contends that plaintiff is not entitled to a hearing because plaintiff never made such a claim as required by section 2—302(2) of the UCC. Alternatively, defendant argues that plaintiff waived any right to a hearing by not making a formal request for a hearing before the trial court.

Section 2—302 of the UCC provides as follows:

"Sec. 2—302. Unconscionable Contract or Clause. (1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination." Ill. Rev. Stat. 1985, ch. 26, par. 2—302.

The claim of unconscionability of the disclaimer of implied warranties and a request for an evidentiary hearing is not raised in plaintiff's complaint or in a reply to defendant's affirmative defense of the disclaimer. While this subject was briefly mentioned by plaintiff during oral argument on the summary judgment motion, plaintiff never filed, thereafter, any motion to include the claim and request for a hearing as part of her complaint or reply to defendant's affirmative defense. As stated in the comment to section 2—302, the "issue of unconscionability will ordinarily be raised by appropriate pleadings." (Ill. Ann. Stat., ch. 26, par. 2—302, Illinois Code Comment, at 173 (Smith-Hurd 1963).) Although the UCC provision also provides that the court may *sua sponte* afford an evidentiary hearing where the contract or a clause appears unconscionable, the trial court here apparently did not perceive the necessity to do so. An issue not properly raised in the trial court cannot be raised for the first time on review. (*People ex rel. Wilcox v. Equity Funding Life Insurance Co.* (1975), 61 Ill. 2d 303, 313, 335 N.E.2d 448.) This is a different theory from what was pleaded below, and it is waived for consideration on review.

■■ ■ Plaintiff's final appellate contention is that the granting of summary judgment on both the warranty and implied warranty theories did not properly dispose of her claim for revocation of acceptance which was supported by separate allegations in the complaint. She cites *Blankenship v. Northtown Ford, Inc.* (1981), 95 Ill. App. 3d 303, 420 N.E.2d 167, as support for her contention that even if defendant has effectively disclaimed all implied warranties, she still has a cause of action to revoke her acceptance of the vehicle pursuant to section 2—608 of the UCC.

Defendant responds that plaintiff did not raise this issue when

she argued in opposition to its motion for summary judgment. While it is accurate that plaintiff did not argue this point at the hearing on the motion, the record also reveals that defendant did not refer to the allegations in the complaint pertaining to the revocation of acceptance theory in its motion for summary judgment or in argument thereon. It appears that neither the parties nor the court considered this theory, and it was apparently overlooked. Defendant, as the moving party, must show it is entitled to summary judgment as a matter of law. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867.) It has failed to do so.

Plaintiff's complaint alleges, in pertinent part, in both counts, that the defects substantially impaired the value of the vehicle to her, that they could not have been discovered by her prior to her acceptance of the vehicle, that she notified defendant of her revocation of acceptance, and that defendant has refused to provide her with the remedies to which she is entitled upon revocation. These allegations are not disputed by defendant's motion for summary judgment. Nor did defendant raise any objection below or in its appellate brief challenging the pleading of more than one action in the same count. (See Ill. Rev. Stat. 1985, ch. 110, par. 2—603(b).) Accordingly, defendant has not supplied any facts which would entitle it to summary judgment on this theory of recovery.

Defendant has also attempted to distinguish *Blankenship* from the facts pleaded in this case. While the facts may be different, the theory of recovery of revocation of acceptance pursuant to section 2—608 of the UCC in *Blankenship*, and pleaded here, was not challenged below by motion or in defendant's brief. Accordingly, summary judgment on the claim for revocation of acceptance must be reversed.

For the foregoing reasons, the grant of summary judgment on the express warranty and implied warranty claims is affirmed, and the grant of summary judgment on the theory of revocation of acceptance is reversed and remanded.

Affirmed in part, reversed and remanded in part.

HOPF and DUNN, JJ., concur.

APPENDIX A

# RETAIL BUYER'S ORDER

1555 E. Rand Road • Arlington Heights, Illinois 60004
(312) 255-5700

DATE _5-7-84_

| SALESMAN | PURCHASER | ADDRESS | CITY |
|---|---|---|---|
| GEORGE UNGARO | DOROTHY E. ⅟OR MARYANN LYTLE | 429 W WOODLAND | |

Res. Phone _495-9135_  Bus. Phone _____  LUMBARD, ILL 60148

ENTER MY ORDER FOR Linc. ___ Merc. ___ Subaru _GL 4WD_ Interm. ___ Other ___ Yr. _84_

Model _WAGON_ Color. 1st _BEIGE_ 2nd ___ 3rd ___ Trim # ___ Top # ___

Stock No. _6640 S_  Serial No. _JF2 AM53 B6EF 4495U_ To Be Delivered _5-8-84 TUES 5PM_

### OPTIONS

AS REQUIRED

INCLUDES RUSTY TONES

### L-M-S CUSTOMER SURVEY

☐ Repeat customer,
    If so, how many?

☐ Financing?
    If not, why or where?

WHY DID CUSTOMER BUY HERE?

☐ Customer Referral
☐ Newspaper
☐ Direct Mail
☐ Radio ☐ TV

### TRADE-IN RECORD

_1975_ _MALIBU CLASIC_ _2 DR._
(Year)  (Make)  (Model)

Serial No. _1D37H5B610896_  License No. _TL429_

Equipment _____

Balance Owed $ _CLEAR_ To _____

Stock No. (Office Use Only) ___ A.C.V. ___

I further warrant the Block to be free of cracks and Trans. and Differential Gears to be sound. Used vehicle to be delivered in same condition, and with same equipment as when appraised.

### INSURANCE DESIRED

TYPES OF COVERAGE ☑ Customer to furnish _OWN_  ☐ Fire & Theft ☐ Collision _____ Type

☐ Credit Life ☐ Health And Accident

Total Premium ☐ Include ☐ Do Not Include } In Contract

THIS ORDER DOES NOT INCLUDE PUBLIC LIABILITY OR PROPERTY DAMAGE.

Driver's License # _L340-1851-9623_

License Plate # _____

SS# 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

Rusty Jones @ 235.⁰⁰ +TAX
included above.

EXHIBIT "B"

| | | |
|---|---|---|
| SELLING PRICE CASH DIFF | 9474 | 00 |
| LIC TRANS | 20 | 00 |
| City TAX | 15 | 00 |
| Sales Tax | 663 | 18 |
| TOTAL DELIVERED PRICE | 10172 | 18 |
| Trade-in Allowance | x x x x | x x |
| Less Balance Owed | x x x x | x x |
| Cash Deposit With Order CASH | 200 | 00 |
| Total Down Payment | 200 | 00 |
| Cash on Delivery | 9972 | 18 |

For and in consideration of the sum of $_____ which you have this day credited to my account, I do hereby bargain, sell and deliver unto ROTO LINCOLN SUBARU, INC one _____ automobile, Model _____ Motor No _____. I warrant the title to said automobile to be in me, and that same is free from encumbrances and all debts, except $_____, due _____, which amount ROTO LINCOLN MERCURY SUBARU, INC. does assume that I have a good right to sell and deliver the above described automobile, and that title and possession thereto I will warrant against the claims of all parties whatsoever, except as above specified I further appoint ROTO LINCOLN MERCURY SUBARU, INC my attorney in fact, to execute reassignment and/or any and all other documents in connection with certificate of title on the aforesaid vehicle in the same manner as myself

### DISCLAIMER OF WARRANTIES

The seller, ROTO LINCOLN MERCURY SUBARU, INC., hereby expressly disclaims all warranties either express or implied, including any implied warranty of merchantability or fitness for a particular purpose, and ROTO LINCOLN MERCURY SUBARU, INC neither assumes nor authorizes any other person to for it any liability in connection with the sale of the vehicle. The above comprises the entire agreement pertaining to this purchase and no other agreement of any kind, verbal understanding or promise whatsoever will be recognized This order is not valid unless signed and accepted by Dealer and approved by a responsible Finance Company as to any deferred balance

DO YOU KNOW ANYONE INTERESTED IN YOUR PRESENT CAR?

BUYER'S SIGNATURE X _____