111 P.3d 417

Brenda JOHNSON, Plaintiff–Appellant,

v.

**EARNHARDT'S GILBERT DODGE, INC., Defendant–Appellee.**

No. 1 CA–CV 02–0656.

Court of Appeals of Arizona,
Division 1, Department E.

April 7, 2005.

Krohn & Moss, Ltd. By Marshall Meyers, Phoenix, Attorneys for Plaintiff–Appellant.

Mary LaRue Walker, Gilbert, Attorney for Defendant–Appellee.

## OPINION

SNOW, Judge.

¶ 1 Brenda Johnson appeals from the summary judgment to Earnhardt's Gilbert Dodge, Inc. (Earnhardt) on her claim for breach of the implied warranty of merchantability under the Magnuson–Moss Warranty Act, 15 U.S.C. sections 2301–2312 (1998) and revocation of her purchase of an automobile due to that breach. For the following reasons, we reverse the summary judgment, vacate the award of attorneys' fees and remand for further proceedings.

## HISTORY

¶ 2 Johnson bought a used 1997 Kia Sportage from Earnhardt in May 2000. The sales contract stated that the Kia was sold "AS IS," except for a warranty of merchantability lasting for fifteen days or 500 miles after delivery, whichever occurred earlier.

¶ 3 As the motor vehicle retail installment sales contract between Johnson and Earnhardt further specified, at the time of the Kia's sale, Earnhardt also sold Johnson a DaimlerChrysler six year/60,000 mile extended service contract to cover the Kia. Johnson paid Earnhardt an additional $1235 for this service contract. The service contract application was signed both by Johnson as the purchaser of the service contract and by Earnhardt as the dealer. In the application, a copy of which was provided to Johnson, Earnhardt affirms that: (1) the vehicle qualifies for the DaimlerChrysler service contract; (2) it had reviewed the service contract with Johnson and provided her a copy of the

application; (3) it would provide service to Johnson in accordance with the provisions of the service contract; and (4) DaimlerChrysler could set off any money it owed Earnhardt for any claim due to a breach of representation. In her affidavit Johnson states that she was told by Earnhardt that she was purchasing an extended warranty from Earnhardt that DaimlerChrysler administered.

¶ 4 The service plan included "the total cost (parts and labor) less a deductible per visit to correct ... [specified] mechanical failures, caused by a defect in materials or workmanship of a covered component." The Plan then lists the covered components which include most components necessary to the operation of an automobile. The Plan specifies that "[t]his Plan is a service contract between you and us" and defined "us" as DaimlerChrysler Corporation. However, the plan directed Johnson to Earnhardt to obtain Plan service: "Plan service will be provided or assisted by the Dealer who sold you the Plan, at his place of business."[1]

¶ 5 Johnson took her vehicle for repairs to Earnhardt and subsequently to another dealer. Almost a year after the purchase, on April 30, 2001, Johnson attempted to revoke her acceptance of the vehicle due to service concerns. Between the time of purchase and the time of the attempted revocation, Johnson drove the Kia for approximately 9295 miles. Earnhardt declined Johnson's tender, and Johnson filed suit for breach of the implied warranty of merchantability and revocation of acceptance under the Act. Earnhardt answered and then successfully moved for summary judgment on both counts. The trial court awarded Earnhardt its attorneys' fees. This appeal followed.

## ANALYSIS

¶ 6 When reviewing summary judgment, we determine de novo whether any genuine dispute of material fact exists and whether the trial court accurately applied the law. *Great Am. Mortgage, Inc. v. Statewide Ins. Co.*, 189 Ariz. 123, 124–25, 938 P.2d 1124, 1125–26 (App.1997) (citing *Colonial Tri–City*

*Ltd. P'ship v. Ben Franklin Stores, Inc.*, 179 Ariz. 428, 432, 880 P.2d 648, 652 (App.1993)). We view all facts in the light most favorable to the party against whom summary judgment was granted. *Id.*

¶ 7 Arizona law allows a used car dealer to limit the implied warranty of merchantability that arises upon the sale of a used automobile. Arizona Revised Statutes ("A.R.S.") section 44–1267 (2003). Federal law known as the Magnuson–Moss Warranty Act, however, prevents an automobile dealer from placing any limitation on an implied warranty if the dealer has made a written warranty to the used car purchaser or if the dealer has "entered into" a service contract with the purchaser:

> No supplier may disclaim or modify ... any implied warranty to a consumer with respect to such consumer product if (1) such supplier makes any written warranty to the consumer with respect to such consumer product, or (2) at the time of sale, or within 90 days thereafter, such supplier enters into a service contract with the consumer which applies to such consumer product.

15 U.S.C. § 2308(a).

¶ 8 Here the superior court granted summary judgment because it determined that Earnhardt did not "enter into" a service contract with Johnson. Accordingly, Earnhardt was not prevented from limiting the implied warranty to the extent allowed by state law. And, as a matter of undisputed fact, Johnson did not seek to revoke her acceptance of the Kia until many months after the implied warranty had expired. Thus, the court determined that Johnson's attempted revocation was unreasonable as a matter of law.

¶ 9 On appeal, Johnson argues that Earnhardt did "enter into" a service contract with her and, further, that as the term "warranty" is defined by the Magnuson–Moss Act, Earnhardt gave Johnson a warranty in connection with her purchase of the Kia. Johnson argues that because under such circumstances Earn-

---

1. The Plan further indicates that "[i]n the event you cannot return to the selling Dealer for service, you may request service from any Chrysler, Plymouth, Dodge or Jeep Dealer within the 50 States, District of Columbia or Canada."

hardt may not limit the implied warranty of merchantability, she is entitled to pursue her claim for breach of the implied warranty and her dependent cause of action for revocation.

### 1. Earnhardt "Entered Into" A Service Contract with Johnson.

¶ 10 In her affidavit, Johnson testifies that "[a]t the time I purchased this extended warranty/service contract, it was explained to me that I was purchasing Earnhardt's extended warranty and that DaimlerChrysler was the 'administrator' of the warranty. The way it was explained to me was that I could always bring the Kia into Earnhardt's for repair at no charge but that I just had to call Chrysler first." Language consistent with this understanding was contained in the DaimlerChrysler service contract application, which both Earnhardt and Johnson signed at the time of sale, and forwarded to DaimlerChrysler. Earnhardt agreed in that application that it would "provide service to the purchaser in accordance with the provisions of the service contract Daimler Chrysler will issue to the purchaser." Johnson paid Earnhardt approximately $1235 for that contract. The complete contract arrangements between DaimlerChrysler and Earnhardt pertaining to the service agreement are not a part of the record. But the record does make clear that in the service agreement with DaimlerChrysler, both Earnhardt and Johnson made representations or provided consideration to DaimlerChrysler and to each other. The application also specified duties and obligations of Earnhardt, Johnson, and DaimlerChrysler.

¶ 11 Earnhardt may not credibly argue that it agreed only for the benefit of DaimlerChrysler to provide service to Johnson when it explicitly assured Johnson that it would be providing the service under the service contract when it sold her the car. Johnson is bound by the conditions and obligations set forth in the application; she is also entitled to its benefits. One of those benefits is the right to take the Kia to Earnhardt to receive the service promised under the contract. Accordingly, the trial court erred when it determined that Earnhardt did not "enter into" a service contract with Johnson.

¶ 12 By the plain language of the application and the service agreement, Earnhardt is a party to the agreement among Johnson, Earnhardt and DaimlerChrysler to provide service for Johnson's Kia. *State ex rel. Goddard v. R.J. Reynolds Tobacco Co.*, 206 Ariz. 117, 120 ¶¶ 12–13, 75 P.3d 1075, 1078 (App. 2003) (words of contract are given their plain meaning). Therefore, summary judgment against Johnson is not appropriate.

### 2. Earnhardt's Written Agreement Constitutes A Warranty.

¶ 13 Further, under the very expansive definition of warranty contained in the Act, Earnhardt made a warranty in connection with the sale. The Magnuson–Moss Act defines a warranty as:

> (B) any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking, which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product.

15 U.S.C. § 2301(6). Because Earnhardt undertook the obligation to provide the service in writing, and in conjunction with its sale of the Kia to Johnson, it fits within the Act's definition of a warranty. This warranty provides an additional basis preventing Earnhardt from limiting the implied warranty of merchantability under the Act.

¶ 14 Earnhardt argues that pursuant to *Priebe v. Autobarn, Ltd.*, 240 F.3d 584 (7th Cir.2001), it should be allowed to limit any implied warranties that arise when selling an automobile in conjunction with a service contract because DaimlerChrysler, not Earnhardt, was the contracting party under the service agreement. However, that argument rings hollow because Earnhardt agreed to provide Johnson the service indicated in the DaimlerChrysler service contract. That salient fact distinguishes this case from *Priebe*.

¶ 15 In *Priebe,* unlike this case, the automotive dealer had no obligation to provide service to Priebe's vehicle once he purchased it. As in this case, the dealer, Autobarn, sold the vehicle "as is" and disclaimed all implied warranties. *Id.* at 586. It also sold Priebe a service contract administered by Automobile Protection Corporation (APCO). *Id.* However, under that service contract, Autobarn had no obligation to provide service or repairs to the vehicle. As the Seventh Circuit noted in affirming the summary judgment in Autobarn's favor, "Priebe knew that Autobarn bore no responsibility under the service contact." *Id.* And, thus, "the service contract cannot be construed as creating a warranty of merchantability because the service contract bound APCO, not Autobarn, to repair the Acura." *Id.* at 588.

¶ 16 By contrast, however, Johnson was told that her service contract was with Earnhardt and Earnhardt agreed to provide to Johnson the services specified in the agreement. Thus, as opposed to *Priebe,* Earnhardt did "enter into" the service contract it sold Johnson, even if DaimlerChrysler was also a party to that contract. It also provided a warranty as that term is defined by the Act. *See also Rothe v. Maloney Cadillac, Inc.,* 142 Ill.App.3d 937, 97 Ill.Dec. 61, 492 N.E.2d 497, 503 (1986), *aff'd in part and vacated in part,* 119 Ill.2d 288, 116 Ill.Dec. 207, 518 N.E.2d 1028 (1988) (When dealership agreed "to promptly perform and fulfill all terms and conditions of the owner service policy," disclaimers of implied warranties were not valid under the Act); *Ventura v. Ford Motor Corp.,* 180 N.J.Super. 45, 433 A.2d 801, 809 (Ct.App.Div.1981) (same).

¶ 17 This holding is also consistent with our holding in *Lemons v. Showcase,* 207 Ariz. 537, 88 P.3d 1149 (App.2004). In that case, Showcase asserted that it was not a party to a service contract it sold Lemons at the time it sold her a Dodge Durango. The service plan sold by Showcase was offered by Mechanical Protection Plan. Indeed, pursuant to that service contract it was not evident that Showcase had any obligation to provide service or repairs on the automobile Showcase sold Lemons, although Lemons argued that Showcase had made oral representations to

this effect. Showcase thus asserted it was able to limit any implied warranty on the vehicle in conjunction with state law and summary judgment had been appropriately granted in its favor.

¶ 18 However, on appeal we noted that under the contract between Showcase and Mechanical Protection Plan, which had not been provided to Lemons until after she had responded to Showcase's motion for summary judgment, there were provisions that suggested that Showcase and not Mechanical Protection Plan was the actual party contracting with Lemons to provide the vehicle service. We thus reversed the summary judgment and remanded for further proceedings.

¶ 19 Here, Earnhardt made representations in writing to Johnson that it would provide the service specified in the service agreement. It made these representations in connection with Johnson's purchase of the Kia and the accompanying service contract. We interpret contracts in light of the parties' intentions as reflected by their language and in view of all the circumstances. *Harris v. Harris,* 195 Ariz. 559, 562 ¶ 15, 991 P.2d 262, 265 (App.1999).

¶ 20 Therefore, Earnhardt is unable to limit the implied warranty of merchantability that attaches to its sale of the Kia to Johnson. We thus vacate the trial court's dismissal of Johnson's claim for the breach of the implied warranty of merchantability and its dismissal of the dependant cause of action for revocation.

### 3. Earnhardt Limited The Implied Warranty of Merchantability.

¶ 21 Earnhardt finally asserts that it did not limit the implied warranty of merchantability because the implied warranty is defined by state law. In this case, Earnhardt argues, state law limits the scope of the implied warranty of merchantability accompanying the sale of a used motor vehicle to only fifteen days or five hundred miles whichever comes first. It argues, Earnhardt did nothing to limit the term of the warranty. Rather the implied warranty simply expired well before Johnson's attempt to revoke her purchase, and the trial court correctly grant-

ed summary judgment. We do not agree. State law does not define the implied warranty of merchantability as being only fifteen days or five hundred miles. Instead, it permits a used car dealer to limit the implied warranty of merchantability to that extent but no further.

¶ 22 Earnhardt cites a single sentence from A.R.S. § 44–1267(C) to support its argument that state law limits an implied warranty in the sale of a used car. That sentence states that "[t]he implied warranty of merchantability expires at midnight of the fifteenth calendar day after delivery of a used motor vehicle or when a motor vehicle has been driven five hundred miles after delivery, whichever is earlier." However, we must interpret the individual provisions of a statute "in the context of the entire statute." *Burlington Northern and Santa Fe Ry. Co. v. Arizona Corp. Comm'n.*, 198 Ariz. 604, 607 ¶ 15, 12 P.3d 1208, 1211 (App.2000); *Prudential v. Estate of Rojo–Pacheco*, 192 Ariz. 139, 148, 962 P.2d 213, 222 (App.1997) (We review a specific statute in the context of its overall statutory scheme "with the goal of achieving consistency among related provisions."). When the sentence cited by Earnhardt is read in the context of the rest of the statute, it is clear that the statute does not define the scope of an implied warranty of merchantability; it merely sets forth the extent to which a used car dealer can limit such an implied warranty.

¶ 23 In Arizona, an implied warranty of merchantability arises in a contract for a sale of goods by a merchant unless excluded or modified. "Unless excluded or modified (§ 47–2316), a warranty that goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." A.R.S. § 47–2314(A) (1997). Such an implied warranty can be completely excluded by using appro-

priate language in accomplishing the sale. A.R.S. § 47–2316(C)(1) (1997). However, the statute relied upon by Earnhardt, A.R.S. § 44–1267, specifies that even by using such language, a used car dealer cannot limit the implied warranty of fitness that arises upon the sale of a used car to a period less than fifteen days or 500 miles, whichever comes first. A.R.S. § 44–1267(B). If the dealer does not comply with the action required by the statute to limit the implied warranty of merchantability, then the implied warranty is as otherwise specified by state law for the sale of all goods sold by a merchant. ("A used motor vehicle dealer shall not exclude, modify or disclaim the implied warranty of merchantability prescribed in § 47–2314 or limit the remedies for breach of that warranty except as otherwise provided in this section."). Thus, read in appropriate context within the statute, it is clear that the statute does not itself limit the period of the implied warranty. Rather, it permits the used car dealer to do so.

¶ 24 As discussed above, when the dealer has given a warranty or entered into a service contract with the purchaser in connection with its sale of a used car to the purchaser, federal law prevents the used car dealer from limiting the implied warranty of merchantability, even if authorized to do so by state law.[2] Thus, because Earnhardt "entered into" a service contract with Johnson and because it made a "warranty" in connection with the sale, it is not permitted to limit the implied warranty of merchantability set forth in A.R.S. § 47–2314(A).

### 4. The Attorneys' Fee Award Is Vacated.

¶ 25 Because we reverse the grant of summary judgment and remand for further proceedings, we also vacate the award of attorneys' fees. The parties both request at-

---

**2.** Even if the statute operated as Earnhardt suggests, it would not justify the entry of summary judgment in this case. The statute specifies that "[i]n calculating time under this subsection, a day on which the warranty is breached is excluded and all subsequent days in which the motor vehicle fails to conform with the implied warranty of merchantability are also excluded." A.R.S. § 44–1267(B). The statute similarly excludes

from the mileage covered by the implied warranty miles driven in connection with obtaining service or repair to the car. *Id.* The determination whether and for what periods the car was in compliance with the implied warranty was not at issue in the motion. Nor was the mileage driven to obtain repairs. The trial court could not have determined without such evidence that the implied warranty had expired.

torneys' fees on appeal; we need not yet reach this issue because there is not yet a successful party.

## CONCLUSION

¶ 26 We reverse both the trial court's grant of summary judgment and award of attorneys' fees to Earnhardt and remand for proceedings consistent with this opinion. In addition, we decline to award either party attorneys' fees on appeal.

CONCURRING: JOHN C. GEMMILL, Judge.

THOMPSON, Judge, dissenting.

¶ 27 A warranty in this context is a

written statement arising out of a sale to the consumer of a consumer good pursuant to which the manufacturer, distributor, or retailer undertakes to preserve or maintain the utility or performance of the consumer good or provide compensation if there is a failure in utility or performance.

Black's Law Dictionary 1423 (5th ed.1979).

¶ 28 Earnhardt agreed to do warranty work if DaimlerChrysler, the warrantor, authorized and paid for it. Under the Act, a warranty can be in the form of a service contract, but it still has to be a warranty. Obviously, Earnhardt was not a warrantor here; DaimlerChrysler was obliged to make good on the car's utility and performance. . The trial court did not err, and I would affirm.