SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| BRENDA JOHNSON, | ) | Arizona Supreme Court |
| | ) | No. CV-05-0204-PR |
| Plaintiff-Appellant, | ) | |
| | ) | Court of Appeals |
| v. | ) | Division One |
| | ) | No. 1 CA-CV 02-0656 |
| EARNHARDT'S GILBERT DODGE, INC., | ) | |
| | ) | Maricopa County |
| Defendant-Appellee. | ) | Superior Court |
| | ) | No. CV 01-009418 |
| | ) | |
| | ) | **O P I N I O N** |
| _____ | ) | |

Appeal from the Superior Court in Maricopa County
The Honorable Gary E. Donahoe, Judge

**REVERSED AND REMANDED**

Opinion of the Court of Appeals, Division One
210 Ariz. 375, 111 P.3d 417 (App. 2005)

**VACATED**
_____

KROHN & MOSS, LTD.                                              Phoenix
      By   Marshall Meyers
Attorney for Brenda Johnson

MARY LaRUE WALKER                                              Chandler

And

OSBORN MALEDON, P.A.                                            Phoenix
      By   Thomas L. Hudson
           Jason J. Romero
Attorneys for Earnhardt's Gilbert Dodge, Inc.

SACKS TIERNEY P.A.                                            Scottsdale
      By   James W. Armstrong
           Gaye L. Gould
Attorneys for Amici Curiae Arizona Automobile Dealers Association and
Arizona Recreational Vehicle Dealers Association

BOWMAN AND BROOKE LLP                                   Phoenix
      By   Negatu Molla
           Abram N. Bowman
Attorneys for Amicus Curiae DaimlerChrysler Corporation
_____

**R Y A N**, Justice

**¶1**      With most goods, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Ariz. Rev. Stat. ("A.R.S.") § 47-2314(A) (2005). However, the implied warranty of merchantability for the sale of a used motor vehicle may be limited to fifteen days or five hundred miles, whichever occurs first. A.R.S. § 44-1267(B) (2003). To limit the implied warranty of merchantability to the statutory minimum, a dealer must include in the sales agreement a conspicuous statement in bold type that the "vehicle will be fit for the ordinary purposes for which the vehicle is used for 15 days or 500 miles after delivery, whichever is earlier." *Id.* § 44-1267(G).[1]

**¶2**      The statutory ability to limit the implied warranty is subject to an important caveat. Under the Magnuson-Moss Warranty Act ("Warranty Act" or "Act"), 15 U.S.C. §§ 2301-2312 (2000), if a used car dealer enters into a service contract with the purchaser at the

_____

[1]   A purchaser also "may waive the implied warranty of merchantability" for specific defects in the vehicle if the dealer "fully and accurately discloses" the defect, "[t]he purchaser agrees to buy the . . . vehicle after disclosure of the defect," and a "conspicuous statement" is printed on the sales agreement describing the specific defect.  A.R.S. § 44-1267(I).

2

time of sale or ninety days thereafter, no limitation on an implied warranty of merchantability is permitted. 15 U.S.C. § 2308(a).[2] Under such circumstances, the terms of the service contract govern the duration of the implied warranty of merchantability. *See id*. § 2308(b).

¶3      We address two questions in this case: first, whether the used car dealer here entered into a service contract with the purchaser, and second, whether the service contract was a warranty under the Warranty Act. We have jurisdiction under Article 6, Section 5(3), of the Arizona Constitution and A.R.S. § 12-120.24 (2003).

**I**

¶4      In May 2000, Brenda Johnson purchased a used 1997 Kia Sportage "AS IS" from Earnhardt's Gilbert Dodge, Inc. ("Earnhardt"). The sales agreement expressly limited the implied warranty of merchantability to fifteen days or five hundred miles, whichever occurred first. In the same transaction, Johnson, through Earnhardt, applied to purchase a DaimlerChrysler service contract. Both Earnhardt's Finance Manager and Johnson signed the application. Johnson paid an amount in addition to the purchase price of the vehicle for the service contract. The service contract was subsequently issued to Johnson by DaimlerChrysler.

---

[2]     This prohibition also applies if a supplier "makes any written warranty to the consumer." 15 U.S.C. § 2308(a).

**¶5** Johnson experienced mechanical problems with the Kia in June 2000, April 2001, and May 2001. These problems were not resolved to Johnson's satisfaction and she attempted to revoke acceptance of the vehicle nearly a year after she had purchased it.

**¶6** When Earnhardt refused to accept return of the vehicle, Johnson filed suit in superior court alleging breach of the implied warranty of merchantability and revocation of acceptance under the Warranty Act.[3] The superior court granted Earnhardt's motion for summary judgment, finding that Johnson had not entered into a service contract with Earnhardt.

**¶7** Johnson appealed. A divided court of appeals reversed the trial court's grant of summary judgment, holding that, as a matter of law, Earnhardt had entered into a service contract with Johnson, and that Earnhardt had also "made a warranty in connection with the sale"; therefore, Earnhardt was not permitted to limit the implied warranty of merchantability. *Johnson v. Earnhardt's Gilbert Dodge, Inc.*, 210 Ariz. 375, 378, 379, 381, ¶¶ 11-13, 20, 26, 111 P.3d 417, 420, 421, 423 (App. 2005).[4]

---

[3] Because Johnson has since sold the vehicle, revocation is no longer an available remedy. *See Parrot v. DaimlerChrysler Corp.*, ___, Ariz. ___, ¶ 41, 130 P.3d 530, 537 (2006); *Hull v. DaimlerChrysler Corp.*, 209 Ariz. 256, 259, ¶ 16, 99 P.3d 1026, 1029 (App. 2004).

[4] Concluding that "Earnhardt was not a warrantor here" because DaimlerChrysler was responsible for the vehicle's performance and also for any costs of "warranty work" on the vehicle, Judge Thompson dissented. *Johnson*, 210 Ariz. at 381, ¶ 28, 111 P.3d at 423 (Thompson, J., dissenting).

4

¶8      The Warranty Act defines a service contract as "a contract in writing to perform, over a fixed period of time or for a specified duration, services relating to the maintenance or repair (or both) of a consumer product."  15 U.S.C. § 2301(8).  A service contract requires "some consideration in addition to the purchase price of the consumer product."  16 C.F.R. § 700.11(c) (2005); *see also Id.* § 700.11(b).  Moreover, "[n]o supplier may disclaim or modify (except as provided in [15 U.S.C. § 2308(b)]) any implied warranty to a consumer with respect to such consumer product if . . . at the time of sale, or within 90 days thereafter, such supplier *enters into* a service contract with the consumer which applies to such consumer product."  15 U.S.C. § 2308(a) (emphasis added).

¶9      The Act and its implementing regulations does not provide any guidance on when a supplier "enters into" a service contract with a consumer. *See* Barkley Clark & Christopher Smith, *The Law of Product Warranties* § 19:5 n.4 (Westlaw 2002) ("The legislative history of [15 U.S.C. § 2308] does not shed any light on the meaning of the phrase 'enters into.'").  When the Warranty Act does not define a term or phrase, we look to state law to resolve this issue. *See, e.g.*, Curtis R. Reitz, *Consumer Product Warranties Under Federal and State Laws* § 2.01, at 13 (2d ed. 1987) (stating that the Warranty Act "is partial and corrective legislation that begins with acceptance of the

continuation of existing state law as the foundation.  The reform of federal law is overlaid on that body of state law . . . [b]ut familiar, traditional state law remains in place unless displaced by the Act or its regulation"); Henry Weinstock, Comment, *Consumer Warranty Law in California Under the Commercial Code and the Song-Beverly and Magnuson-Moss Warranty Acts*, 26 UCLA L. Rev. 583, 675 (1979) ("The Magnuson-Moss Warranty Act does not attempt to supplant state law; its goal is to supplement the consumer's rights.").[5]

**B**

¶10      A contract is "a bargain in which there is a manifestation of mutual assent to the exchange and a consideration."  Restatement (Second) of Contracts § 17(1) (1981) ("Restatement"); *see also Hill-Shafer P'ship v. Chilson Family Trust*, 165 Ariz. 469, 473-74, 799 P.2d 810, 814-15 (1990) (requiring a meeting of the minds for contract formation).

¶11      Mutual assent is ascertained from "objective evidence, not [from] the hidden intent of the parties."  *Hill-Shafer P'ship*, 165 Ariz. at 474, 799 P.2d at 815.   Objective evidence includes written and spoken words as well as acts.  *Corbin-Dykes Elec. Co. v. Burr*, 18 Ariz. App. 101, 103, 500 P.2d 632, 634 (1972) (holding that the

---

[5]      The service contract in this matter contains a choice of law clause stating that "[e]xcept where prohibited by law, this contract will be governed by Michigan law."  Neither party has raised the choice of law clause in this matter.  Moreover, Michigan contract law does not appear to differ materially from Arizona contract law with respect

6

manifestation of mutual assent "is determined by the words used and the other manifestations of intent having reference to the contract"); Restatement § 19(1) ("The manifestation of assent may be made wholly or partly by written or spoken words or by other acts or by failure to act.").

¶12     Under Arizona's parol evidence rule, "[w]here . . . an ambiguity exists on the face of [a] document or the language admits of differing interpretations, parol evidence is admissible to clarify and explain the document." *Standage Ventures, Inc. v. State*, 114 Ariz. 480, 482, 562 P.2d 360, 362 (1977); *see also Leo Eisenberg & Co. v. Payson*, 162 Ariz. 529, 532, 785 P.2d 49, 52 (1989). The court may also admit evidence to determine the intention of the parties if "the judge . . . finds that the contract language is 'reasonably susceptible' to the interpretation asserted by its proponent." *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 154, 854 P.2d 1134, 1140 (1993).

C

¶13     The court of appeals held that "the trial court erred when it determined that Earnhardt did not 'enter into' a service contract with Johnson" because "[b]y the plain language of the application and the service agreement, Earnhardt is a party to the agreement among Johnson, Earnhardt and DaimlerChrysler to provide service for

---

to this case. Thus, we refer to Arizona contract law throughout this opinion.

7

Johnson's Kia." *Johnson*, 210 Ariz. at 378, ¶¶ 11–12, 111 P.3d at 420. We agree with the court of appeals that the superior court erred in granting summary judgment against Johnson. We conclude, however, that the court of appeals erred in holding, as a matter of law, that Earnhardt was a party to the service contract.

### 1

¶14 In considering Earnhardt's motion for summary judgment, the superior court stated that Congress intended the phrase "enters into" to apply only to parties. Because it granted the motion, the court must therefore have implicitly concluded that Earnhardt was not a party to the service contract.

¶15 "Summary judgment is appropriate only if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law." *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 482, ¶ 14, 38 P.3d 12, 20 (2002) (citing Ariz. R. Civ. P. 56(c); *Orme School v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990)). "Thus, summary judgment in favor of either party is appropriate only 'if the facts produced in support of the [other party's] claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense.'" *Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 13, 69 P.3d 7, 11 (2003) (quoting *Orme School*, 166 Ariz. at 309, 802 P.2d at 1008) (alteration in original).

¶16     We agree that a service contract that merely obligates a third party to provide services has not been "entered into" by the dealer, even when sold by the dealer. We also assume that to be the case even if the third party (such as DaimlerChrysler) has contractual arrangements with the dealer requiring the dealer to provide the service. In this case, however, language in the documents comprising the transaction, combined with parol evidence, both supports and undermines the conclusion that Earnhardt itself entered into the service contract. This evidence raises a question of fact as to whether Earnhardt was a party to the service contract.

¶17     First, the service contract contains conflicting language about who was a party to the service contract. Some language in the contract supports the proposition that only Johnson and DaimlerChrysler are parties to the service contract. For example, the service contract defines "you, your" to mean "the Plan purchaser." It defines "we, us, our" as "DaimlerChrysler Corporation." And, the contract states that "[t]his Plan is a service contract between you and us" and "[w]e are solely responsible (liable) for fulfillment of the provisions of the Plan."

¶18     Other language, however, supports the proposition that Earnhardt is also a party to the service contract. The service contract application contained an express signed promise from Earnhardt that it would "provide service to [Johnson] in accordance with the provisions of the service contract DaimlerChrysler will

9

issue to the purchaser." A reasonable consumer in Johnson's position could interpret this language as meaning that Earnhardt was obligated under the service contract to provide service to Johnson. *See Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 140 Ariz. 383, 389-90, 682 P.2d 388, 394-95 (1984) (recognizing the doctrine of reasonable expectations in contract law).

¶19    Parol evidence also supports finding Earnhardt a party to the contract. In her response to Earnhardt's motion for summary judgment, Johnson provided an affidavit stating in relevant part:

> At the time I purchased this extended warranty/service contract, it was explained to me that I was purchasing Earnhardt's extended warranty and that Chrysler was the "administrator" of the warranty. The way it was explained to me was that I could always bring the Kia into Earnhardt's for repair at no charge but that I just had to call Chrysler first. I understood this to mean that the warranty I was buying from Earnhardt's was Chrysler and Earnhardt's joint extended warranty.
>
> It was never explained to me that I was buying a Chrysler warranty only. To the contrary, when I asked the question about extra warranty protection, I was told there were numerous extended warranties on the market but that I wanted to buy a "specific one," the one "we do with Chrysler."

Such parol evidence is admissible to determine the intention of the parties because the conflicting language in the documents comprising the transaction is reasonably susceptible to the interpretation that Earnhardt is a party to the contract. *See Taylor*, 175 Ariz. at 154, 854 P.2d at 1140.

¶20    Language in the service contract application also raises

10

a question of fact as to whether Earnhardt was a party to a conditional contract to provide service to Johnson. A conditional contract is "an executory contract, the performance of which depends on a condition." *Ross v. Bumstead*, 65 Ariz. 61, 63, 173 P.2d 765, 766-67 (1946); *see also* 17A C.J.S. *Contracts* § 355 (1999).

¶21    The service contract application contains the clause "[Earnhardt] will provide service to [Johnson] in accordance with the provisions of the service contract DaimlerChrysler will issue to [Johnson]." This clause could reasonably be read as a conditional promise by Earnhardt to Johnson to repair her vehicle. Also, the Retail Installment Contract contains the statement "[Earnhardt] may be retaining a portion of [Johnson's payment of $1,235]." This statement suggests that Earnhardt received consideration for the promise.

¶22    But the language at issue could also be read as a promise by Earnhardt solely to DaimlerChrysler to repair Johnson's vehicle, and not a promise by Earnhardt to Johnson. The face of the application provides the evidence for this proposition. The application is titled "DaimlerChrysler Service Contract Application." In addition, the application states the following: "NOTE: . . . This document is an application for the DaimlerChrysler Service Contract and does not constitute a service contract until accepted by DaimlerChrysler Service Contracts." Thus, the application could reasonably be interpreted as creating just one contract – between the applicant and

11

DaimlerChrysler. As a result, evidence both supports the existence of a conditional contract between Johnson and Earnhardt and refutes the existence of such a contract.

¶23 The conflicting language of the service contract and the service contract application, along with the parol evidence, creates sufficient questions of fact for Johnson's case to survive summary judgment on the issue of whether Earnhardt entered into the service contract.

**2**

¶24 In examining the same evidence, the court of appeals found as a matter of law that Earnhardt had entered into a service contract with Johnson. *Johnson*, 210 Ariz. at 378, ¶¶ 10-12, 111 P.3d at 420. Pointing to Johnson's affidavit, *id*. at ¶ 10, along with "the plain language of the application and the service agreement . . . among Johnson, Earnhardt and DaimlerChrysler," *id*. at ¶ 12, the court found that Earnhardt was a party to the service agreement, *id*. But, as discussed above, some of the language in the documents involved in this transaction supports Earnhardt's contention that it did not enter into a service contract with Johnson. *See supra* ¶¶ 17, 22. Specifically, portions of the service contract support Earnhardt's claim that the service contract was between Johnson and DaimlerChrysler and that Earnhardt simply sold the contract to Johnson.

¶25 We also note that Johnson did not move for summary judgment

in the superior court. She instead contended there were questions of fact concerning whether Earnhardt was a party to the service contract. "[T]he propriety of granting summary judgment in favor of a party who did not so move is often a 'close question.'" *Kassbaum v. Steppenwolf Prods., Inc.*, 236 F.3d 487, 494 (9th Cir. 2000) (quoting *Sohappy v. Hodel*, 911 F.2d 1312, 1320 (9th Cir. 1990)). If a court should conclude "that a non-moving party is entitled to judgment, 'great care must be exercised to assure that the original movant has had an adequate opportunity to show that there is a genuine issue and that his [or her] opponent is not entitled to judgment as a matter of law.'" *Id.* (quoting *Ramsey v. Coughlin*, 94 F.3d 71, 74 (2d Cir. 1996)) (alteration in original). Moreover, a court "should not reverse a summary judgment and order judgment for a non-moving party based on an issue that the movant had no opportunity to dispute in the [trial] court." *Id.* at 495 (citing *Fountain v. Filson*, 336 U.S. 681, 683 (1949); *see also Century Med. Plaza v. Goldstein*, 122 Ariz. 583, 585, 596 P.2d 721, 723 (App. 1979) ("The weight of authority allows summary judgment for the non-movant, provided the movant had a full opportunity to show there is a material factual dispute under the adversary's theory and that the non-movant is not entitled to judgment as a matter of law.").

¶26 In its supplemental brief, Earnhardt asserts that it had documents (that were not part of the record before the court of appeals) relating to a Federal Trade Commission's Advisory Letter

13

that would help explain when a used car dealer enters a service contract or merely acts as the seller of a service contract. Because of the court of appeals' *sua sponte* decision to find, as a matter of law, that Earnhardt entered into a service contract, Earnhardt did not have the opportunity to present this evidence or other arguments to oppose summary judgment. As a result, the court of appeals erred in entering judgment for Johnson as a matter of law. *See Kassbaum*, 236 F.3d at 495.

### III

¶27 The court of appeals also held that the service contract constituted a written warranty between Earnhardt and Johnson. *Johnson*, 210 Ariz. at 378, 379, ¶¶ 13, 16, 111 P.3d at 420, 421. We disagree because, under the Warranty Act, a service contract differs in significant ways from a written warranty. *See* 15 U.S.C. § 2301(6), (8); 16 C.F.R. § 700.11(b), (c).

### A

¶28 As noted above, under the Warranty Act, a "service contract" is "a contract in writing to perform, over a fixed period of time or for a specified duration, services relating to the maintenance or repair (or both) of a consumer product." 15 U.S.C. § 2301(8). On the other hand, a "written warranty" is defined as:

> (A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a

14

specified level of performance over a specified period of time, or

(B) any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking,

which written affirmation, promise, or undertaking *becomes part of the basis of the bargain between a supplier and a buyer* for purposes other than resale of such product.

*Id.* § 2301(6) (emphasis added).

¶29     Thus, under the plain language defining a written warranty, the "affirmation, promise, or undertaking" must be a part of the basis of the bargain. *Id.* "This means that it must be conveyed at the time of sale of the consumer product and the consumer must not give any consideration beyond the purchase price of the consumer product in order to benefit from the agreement." 16 C.F.R. § 700.11(b). In contrast, a service contract is "an agreement which calls for some consideration in addition to the purchase price of the consumer product, or which is entered into at some date after the purchase of the consumer product to which it applies." *Id.* § 700.11(c); *see also* Clark & Smith, *supra* ¶ 9, § 19:3 ("If the consumer must give any consideration beyond the purchase price of the product in order to benefit from the agreement, it will be a service contract rather than a written warranty."). Thus, a service contract cannot also be a written warranty.

¶30     Johnson argues that the DaimlerChrysler service contract application created a written warranty in addition to a service contract.  We disagree because the plain language of the three documents comprising the transaction shows that Johnson paid a sum in addition to the price of the vehicle for the service contract. First, the Purchase Order differentiates between the cash price of the vehicle ($15,878.48) and the price of the service contract ($1,235.00).  The price of the service contract was then added to the cash price (which had been adjusted based on the down payment, trade-in allowance, and other costs) for a total cost of $14,063.48. Second, in the Retail Installment Contract, the cash price of the vehicle was listed as $14,599.00, while the service contract was listed separately, under "Amounts paid to others," as $1,235.00. Third, the Service Contract Application specifically stated that the price of the service contract was $1,235.00.

¶31     Because separate consideration was paid for the service contract, neither that contract nor the service contract application can give rise to a written warranty.

C

¶32     The court of appeals came to the opposite conclusion for two reasons.  First, the court focused on a provision in the service contract application stating that Earnhardt would "provide service to the purchaser in accordance with the provisions of the service

16

contract Daimler Chrysler [sic] will issue to the purchaser." *Johnson*, 210 Ariz. at 378, ¶ 10, 111 P.3d at 420. The court mistakenly concluded that this provision created a written warranty governed by the Warranty Act because it was a written undertaking to provide service and was made "in conjunction with" the sale of the vehicle. *Id*. at ¶ 13. While the sale of the service contract to Johnson was "in conjunction with" the sale of the vehicle to Johnson, it was not part of the basis of the bargain because Johnson paid separate consideration for the service contract. Therefore, the service contract here is not a written warranty. *See* 15 U.S.C. § 2301(6); 16 C.F.R. § 700.11(b), (c).

¶33 Second, the court drew a connection between language in the service contract application and language found to constitute a written warranty in *Rothe v. Maloney Cadillac, Inc.*, 492 N.E.2d 497, 503-04 (Ill. App. Ct. 1986), *aff'd in part, rev'd in part, vacated in part and remanded*, 518 N.E.2d 1028 (Ill. 1988), and *Ventura v. Ford Motor Corp.*, 433 A.2d 801, 809 (N.J. Super. Ct. App. Div. 1981). *Johnson*, 210 Ariz. at 379, ¶ 16, 111 P.3d at 421. Because the circumstances of those cases materially differ from those in this case, the court of appeals' reliance on their reasoning is misplaced.

¶34 In *Ventura*, the dealer's purchase order-contract contained the statement: "The selling dealer also agrees to promptly perform and fulfill all terms and conditions of the owner service policy." 433 A.2d at 809 (internal quotation marks omitted). The court found

17

that this undertaking "constitute[d] a written warranty within the meaning of 15 U.S.C.[] § 2301(6)(B)." *Id*. at 810. But this undertaking was in relation to the limited warranty provided by Ford to the purchaser (the "owner service policy"). *See id*. at 809-10. The price of this limited warranty was built into the purchase price of the vehicle – no separate consideration was paid for it. *See id*. at 807, 809, 811 (noting that the dealer gave or passed on the manufacturer's warranty to the purchaser and the manufacturer gave the warranty "to induce the sale"). Thus, nothing in *Ventura* suggests that a contract for which the vehicle purchaser paid separate consideration, as is the case here, can constitute a written warranty. *See* 16 C.F.R. § 700.11(b), (c). *Rothe* is to the same effect; it simply relies upon *Ventura* to conclude that language in the sales contract stating that the dealer "agrees to promptly perform and fulfill all terms and conditions of the owner service policy" forms a written warranty. *Rothe*, 492 N.E.2d at 503 (internal quotation marks omitted).

¶35 In this case, because it is clear that Johnson paid separate consideration for the service contract, the court of appeals erred in concluding that it amounted to a written warranty under the Warranty Act.

**IV**

¶36 Earnhardt requests an award of reasonable attorneys' fees and costs under A.R.S. §§ 12-341, -341.01 (2003). Those statutes

18

permit an award of fees and costs to the "successful party." *Id.* §§ 12-341, -341.01. Because we remand this case, Earnhardt has not prevailed, making an award of fees premature.

**V**

**¶37**       For the foregoing reasons, we vacate the decision of the court of appeals, reverse the superior court's grant of summary judgment, and remand this case to the superior court for further proceedings consistent with this opinion.


_____
                     Michael D. Ryan, Justice

CONCURRING:


_____
Ruth V. McGregor, Chief Justice


_____
Rebecca White Berch, Vice Chief Justice


_____
Andrew D. Hurwitz, Justice


_____
W. Scott Bales, Justice