NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

ANDREW SNYDER, *Plaintiff/Appellant*,

*v.*

ARIZONA BOARD OF REGENTS, *Defendant/Appellee*.

No. 1 CA-CV 14-0536
FILED 12-3-2015

Appeal from the Superior Court in Maricopa County
No. CV2012-016957
The Honorable J. Richard Gama, Judge

**AFFIRMED**

COUNSEL

Grundy Law Firm, PLLC, Phoenix
By Elvin G. Grundy, III
*Counsel for Plaintiff/Appellant*

Cohen Kennedy Dowd & Quigley, P.C., Phoenix
By Daniel G. Dowd, Rebecca van Doren
*Counsel for Defendant/Appellee*

---

## MEMORANDUM DECISION

Judge Jon. W. Thompson delivered the decision of the Court, in which Presiding Judge Donn Kessler and Judge John C. Gemmill joined.

---

**T H O M P S O N**, Judge:

**¶1**        Appellant Andrew Snyder (Snyder), a former Arizona State University student, brought various claims against Arizona State University/the Arizona Board of Regents (collectively, ASU) over what he alleged was his right to admission into ASU's WP Carey School of Business. The trial court granted ASU's motion for summary judgment, denied Snyder's request to amend his complaint, and awarded attorneys' fees against Snyder pursuant to Arizona Revised Statutes  (A.R.S.) § 12-341.01 (2010).  Snyder appeals.   Finding no error, we affirm.

## STANDARD OF REVIEW

**¶2**        We review the grant of summary judgment de novo. *Lewis v. Debord*, 236 Ariz. 57, 59, ¶ 5, 335 P.3d 1136, 1138 (App.  2014).   Summary judgment should be granted "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990).   Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Johnson v. Earnhardt's Gilbert Dodge, Inc.*, 212 Ariz. 381, 385, ¶ 15, 132 P.3d 825, 829 (2006).

**¶3**        After the moving party comes "forward with evidence it believes demonstrates the absence of a genuine issue of material fact," the burden shifts to the non-moving party, who "must call the court's attention to evidence overlooked or ignored by the moving party or must explain why the motion should otherwise be denied." *Nat'l Bank of Ariz. v. Thruston*, 218 Ariz. 112, 115, 119, ¶¶ 14, 26, 180 P.3d 977, 980, 984 (App. 2008); Ariz. R. Civ. P. 56(a) (Supp. 2013).

**¶4**        The party opposing summary judgment "shall file" a statement of the facts in dispute which establish genuine issues of material fact. Ariz. R. Civ. P. 56(c)(3).  The party opposing summary judgment "may

not rely merely on allegations or denials in its own pleading; rather, its response must, by affidavits or as otherwise provided . . . set forth specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment, if appropriate, shall be entered against that party." Ariz. R. Civ. P. 56(e)(4); *see, e.g., Florez v. Sargeant*, 185 Ariz. 521, 526, 917 P.2d 250, 255 (1996) (stating self-serving assertions which are not supported by the factual record are insufficient to defeat a motion for summary judgment); *Margaret H. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 101, 104, ¶ 10, 148 P.3d 1174, 1177 (App. 2006).

## DISCUSSION

### A.    Summary Judgment

**¶5**          Although Snyder filed a response to ASU's motion for summary judgment, he did not file a separate statement of facts, submit an affidavit, or dispute key facts at issue in this case as is required by Arizona Rule of Civil Procedure 56(e)(4).

**¶6**          These basic facts are not merely undisputed on summary judgment, but were testified to as part of Snyder's deposition of July 12, 2013. Snyder entered ASU as a pre-business exploratory student in the fall of 2007. [1]  He was not granted admission directly into the WP Carey Bachelor of Science degree program. In fall 2007, WP Carey revised the admission standards for the Bachelor of Science program.[2]   All pre-business students were notified by email of the changes on October 19, 2007. Thereafter, a student could be admitted by direct admission, for students meeting both the GPA and SAT/ACT score standards, or by a discretionary process called Portfolio Review.   The email advised students that

---

[1] Snyder graduated from high school in the spring of 2007 with a 2.79 GPA, an SAT score of 890, and an ACT score of 22.

[2] The 2007-2008 ASU General Catalogue provided that "[c]ourses, programs, and requirements described in the catalog may be suspended, deleted, restricted, supplemented, or changed in any other manner, at any time, at the sole discretion of the university and the Arizona Board of Regents. The catalog does not establish a contractual relationship, but summarizes the total requirements the student must currently meet before qualifying for a faculty recommendation to the Arizona Board of Regents to award a degree." In his deposition Snyder admitted being contemporaneously aware of the changes outlined in the catalog.

preference would be given to Portfolio Review students with a 3.0 cumulative GPA.

¶7        Snyder admitted, and the trial court found, that as of October 2007, Snyder did not meet the standard for direct admission into the WP Carey Business program.  Snyder admitted, and the trial court found, that he did not have a 3.0 GPA at the time he submitted his portfolio for review. Snyder was aware that there was no guarantee of admission via portfolio. He was denied discretionary admission to the Bachelor of Science program. Snyder testified that the letter denying him discretionary admission into the program was clear and "unequivocal."

¶8        After he was denied discretionary admission, Snyder had a conversation with an ASU employee.   Specifically, on March 4, 2010, Snyder, Snyder's father, and Tim Desch, WP Carey's Assistant Dean for Undergraduate Admissions, (Desch) met to discuss Snyder's future with WP Carey.   One of the key items discussed at the meeting was Snyder's GPA.  At the time Snyder submitted his portfolio his GPA was 2.86, below the preferred 3.00 for discretionary admission into the Bachelor of Science program.  The three men discussed the fact that if Snyder raised his GPA Snyder could submit a second, and final, request for discretionary admission.[3]

¶9        As WP Carey had recently added a less stringent Bachelor of Arts degree as an alternative for students not admitted into the Bachelor of Science program, at that meeting Desch arranged for an override into the Bachelor of Arts program as an accommodation to Snyder.  Desch had the authority to grant an override into the Bachelor of Arts program, but not the Bachelor of Sciences program.  It is undisputed that after the meeting with Desch, Snyder sent Desch an email stating:

> Thank you for clearing that up today.  I apprec[i]ate your time.  I believe the BA in comm wi[ll] be ok for now.  I just wanted to make sure I can continue to take classes this summer and next fall as I work on my ACT and GPA to help

---

[3] It is also undisputed that they discussed that a short-lived and inadvertent "banner" was displayed on Snyder's ASU web page welcoming him to the WP Carey School of Business, before he received the letter denying him admission.

myself move forward. I still am working for the Management degree so when it is time to switch degrees I will probably be coming to you for advice.

¶10     Snyder began asserting a belief that if he raised his GPA to 3.0 that Desch would give him an override into the Bachelor of Science program. In his response to ASU's motion for summary judgment, Snyder asserted his promissory estoppel claim "stem[s] from Snyder's reliance on the oral promises made by [] Desch that should Snyder raise his GPA to 3.0 Snyder could possibly gain direct access (i.e. "automatic") to the Management program via an administrative override."

¶11     Yet, Snyder admits in his deposition that Desch neither explicitly said he would or could grant such an override.[4] What is clear from both Desch's affidavit and Snyder's deposition, is there were statements made during the meeting that once Snyder raised his GPA they could have a "meeting" to "talk about" and "discuss" Snyder getting into the Bachelor of Science program. The following are representative statements Snyder made during his deposition:

> Q. So if I understand what you're saying, Mr. Desch said that if you raise your grade point to a 3.0, you could come back and talk to him about being admitted into the management program within the W. P. Carey School of Business?
> A. Tim Desch promised my father and I if I raised my GPA, that he would honor a meeting to discuss how I could get into management.
> Q. And what was your understanding as to how you could get into management if you did achieve a 3.0?
> A. Desch gave us three options: That I could change my ACT score, I could raise it, and that would automatically allow me into the program; I could get the 3.0, I could raise my GPA, and then that would allow me to do the admissions portfolio again and speak to them; or I could just continue with my bachelor of arts and graduate.
> …
> Q. So is it your testimony, Mr. Snyder, that Mr. Desch committed to you that if you raised your college GPA to a 3.0 that you would be admitted into the management program?
> A. That they would review it; and, yes.
> Q. That they would review what?

---

[4] In fact, Desch did not have the authority to grant such an override.

A. My transcript.

Q. And then automatically admit you?

A. No, that they would just discuss it.

…

Q. With no promises one way or the other; right?

A. They promised that they would review it.

…

Q. There were no promises by Mr. Desch that if you achieved the 3.0 that you were guaranteed admission into the management program?

A. Correct, it was never a guarantee.

…

Q. Did you have an expectation that if you had a 3.0 grade point average, that Mr. Desch would automatically put you into the BS management program?

A. No.

Q. You would talk to him about it?

A. Correct.

¶12 After the March 2010 meeting with Desch, Snyder admits no person or document from ASU ever strayed from saying there were only two ways into the program: direct admission and the Portfolio Review. Not one discussion or document mentioned the possibility of an override admission into the Bachelor of Science program–not even communications from Desch himself.[5] It is undisputed that Desch had advised Snyder he

---

[5] Q. Well, as you sit here today, you can't identify a specific communication you had with someone from ASU where they repeated the verbal agreement you contend was made with Mr. Desch in March of 2010; correct?

A. Not on written documents, no.

Q. Not in an email? No?

A. No.

Q. Not in a letter?

A. No.

Q. Not in a conversation?

A. No.

…

Q. In fact, there's not an email or a piece of paper generated by anyone from May of 2004 --excuse me-- March of 2010 to May of 2012 that discusses the agreement that you assert that Mr. Desch made with you; correct?

could still submit a second portfolio for review, and that while as of May 9, 2012, Snyder was still planning on submitting a second portfolio, he never did.

**¶13**        Despite the fact that on appeal Snyder seeks to claim an oral contract based on his conversation with Desch, his amended complaint asserted contractual claims based on his compliance with ASU's requirements for admission.   The complaint alleged that Snyder had been denied admission without explanation.   "To state a claim in contract the complaint must allege an agreement, the right to seek relief, and breach by the defendant." *Commercial Cornice & Millwork, Inc. v. Camel Const. Servs. Corp.*, 154 Ariz. 34, 38, 739 P.2d 1351, 1355 (App. 1987); *Bike Fashion Corp. v. Kramer*, 202 Ariz. 420, 423, ¶ 14, 46 P.3d 431, 434 (App. 2002) (holding that implied covenant can be breached "both by exercising express discretion in a way inconsistent with a party's reasonable expectations and by acting in ways not expressly excluded by the contract's terms but which nevertheless bear adversely on the party's reasonably expected benefits of the bargain"). The trial court concluded, as a matter of law,  because Snyder did not qualify for direct admission his complaint could not support a breach of contract claim or a breach of the implied covenant of good faith and fair dealing.   We agree.

**¶14**        As to the issue of an alleged oral contract, which Snyder raised for the first time in the proposed second amended complaint, Snyder cannot argue the merits of an issue on appeal that are not comprehended within his own pleadings.  *See Black v. Perkins*, 163 Ariz. 292, 293, 787 P.2d 1088, 1089 (App. 1989) ("When a party by pleading or stipulation has agreed to a certain set of facts, he may not contradict them.  This is a rule not of evidence but of pleading.  When the parties have framed the issues for resolution, they may not change them absent an amendment of the pleadings or trial of the issue by consent.  A party so bound is often said to have made a judicial admission. ").  (Citations omitted.)

---

A. I don't recall all the emails.
Q. Well, can you identify one where either you or someone from ASU articulated the agreement that you contend Mr. Desch made with you?
A. Not off the top of my head.

Snyder admitted that all communications with ASU after March 4, 2010 were inconsistent with what he asserts he was told by Desch, even those communications from Desch himself.

**¶15**        Even if it could be said that the amended complaint contemplated an oral contract, summary judgment was appropriate. Snyder repeatedly admitted that Desch's statement to him was that if Snyder brought his GPA up to a 3.0, he could have a discussion with Desch about possible admission to the program. Snyder brought his GPA up to a 3.0 and Desch and he discussed possible admission. Any such oral contract had been fulfilled.

**¶16**        Promissory estoppel requires a promise to do something in the future that the promisee reasonably relied on to his detriment. *Waugh v. Lennard*, 69 Ariz. 214, 224, 211 P.2d 806, 816 (1949); *Sch. Dist. No. 69 of Maricopa Cty v. Altherr*, 10 Ariz.App. 333, 339, 458 P.2d 537, 544 (1969). Agreeing to have a meeting about admission does not equate to promising automatic admission into the Bachelor of Science program. We agree with the trial court that Snyder failed to demonstrate the existence of a genuine issue of material fact with respect to his estoppel claim and summary judgment was appropriate. *See* Ariz. R. Civ. P. 56(c).

B. Motion to Amend

**¶17**        Next, we assess the denial of Snyder's motion to amend his complaint pursuant to Arizona Rule of Civil Procedure 15. "We review a trial court's denial of a motion to amend a complaint for an abuse of discretion." *Tumacacori Mission Land Dev., Ltd. v. Union Pac. R.R. Co.*, 231 Ariz. 517, 519, ¶ 4, 297 P.3d 923, 925 (App. 2013); *Hall v. Romero*, 141 Ariz. 120, 124, 685 P.2d 757, 761 (App. 1984) (finding no abuse of discretion when trial court denied plaintiffs' motion to amend after summary judgment had been entered against them).

**¶18**        The trial court concluded that granting leave to amend at the summary judgment stage would prejudice ASU and be "futile on these established facts." We agree with the trial court that allegations in the proposed second amended complaint directly contradicted undisputed evidence in the record. The trial court did not err when it denied Snyder's motion. Moreover, we find no abuse of discretion in denying the motion to amend as being untimely. Snyder's argument that the delay was brought about by his repeated changes of counsel and facts surfacing at his deposition are insufficient to show timeliness.

C. Attorneys' Fees Below

**¶19**        Finally, Snyder argues on appeal that the trial court erred by awarding attorneys' fees to ASU. The trial court awarded ASU $45,000 in attorneys' fees pursuant to A.R.S. § 12-341.01. We review awards of

attorneys' fees for an abuse of discretion. *In re Indenture of Trust Dated Jan. 13, 1964*, 235 Ariz. 40, 51, ¶ 41, 326 P.3d 307, 318 (App. 2014). We cannot find error in the trial court's award of fees against Snyder.

ATTORNEYS' FEES ON APPEAL

¶20 ASU requests attorneys' fees on appeal pursuant to A.R.S. § 12-341.01. We will award ASU taxable costs and reasonable attorneys' fees, in an amount to be determined, after compliance with ARCAP 21.

CONCLUSION

¶21 The trial court is affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: ama